OLEGARIO RIERA Y CIFUENTES, demandante y apelante, *v.* JOSEFINA B. MACÍAS VDA. DE RIERA, demandada y apelada.

No. 5011.—*Sometido:* Marzo 7, 1930.—*Resuelto:* Julio 8, 1931.

580

*J. de Guzmán Benítez,* abogado del apelante; *Pellón & Ayuso,* abogados de la apelada.

El Juez Asociado Señor Aldrey, emitió la opinión del tribunal.

Don Olegario Riera Cifuentes, que reside en Madrid, España, demandó en la Corte de Distrito de San Juan de esta Isla a doña Josefina B. Macías Vda. de Riera para que le pagase la cantidad de $50,000 y sus intereses convenidos al 8 por ciento anual, cuya deuda está reconocida en un documento. No negó la demandada haber recibido dicha cantidad en préstamo ni la autenticidad del documento en que consta esa obligación, pero sostiene en su contrademanda que la misma ha sido novada por una transacción acordada entre las partes. La corte de distrito declaró que la obligación

cuyo pago se reclama ha sido novada por la transacción y en consecuencia condenó al demandante a cumplir el pacto de la misma y declaró sin lugar la demanda. Contra esa sentencia fué interpuesta esta apelación por el demandante.

El documento en que el demandante funda su acción, con una nota puesta en él, dice así:

"Por $50,000.00. Debo y pagaré a don Olegario Riera y Cifuentes la suma de CINCUENTA MIL DÓLARES, que del mismo he recibido a mi entera satisfacción. Esta suma devengará intereses a razón del ocho por ciento anual (8%) a contar desde hoy.

"Para garantizar esta deuda he entregado en prenda al señor Riera, los certificados siguientes:

"No. 669 por 1250 acciones de a $20.00 valor a la par de la Central Pasto Viejo;

"No. 1519 por cincuenta acciones de a $1,000.00 a la par de la Central Cambalache;

"No. 1675 por 50 acciones de a $100.00 valor a la par de la Central Yabucoa;

"Estos valores que han sido endosados al Sr. Riera, quedan depositados en la caja del Sr. Rafael Fabián en el Banco Territorial y Agrícola de esta ciudad, y que es la persona designada por el Sr. Riera como depositario de dichas acciones.

"Es convenido que los dividendos que se paguen por concepto de las referidas acciones, me corresponderán y a mí deberán ser satisfechos.

"Es además convenido que podré recoger este pagaré en cualquier momento o abonar cantidades parciales a cuenta del mismo, al cual efecto podré vender, cuando yo lo estime oportuno y conveniente, todas o parte de las acciones aquí pignoradas, y el acreedor vendrá obligado a endosar los títulos a la persona que yo designe.'

"San Juan, P. R., junio 18 de 1923 (firmado) Josefina B. Macías vda. de Riera."

## Nota manuscrita al principio del documento:

"El día 1º de julio 1924 se entregaron al Banco Territorial y Agrícola las 1250 acciones de la Central Pasto Viejo a $20—$25,000.—más—50 acciones de la Central Yabucoa Sugar Company $70—$3,500., que hacen un total de $28,500.—para cancelar un pagaré de la misma suma $28,500 que debe la Viuda de Riera con garantía hipotecaria de la Perla, quedando cancelado este préstamo. Estas acciones se

dispone de ellas según cable de Olegario Riera a Rafael Fabián, fecha 1ro. de julio autorizándole a entregar todas las acciones a la viuda de Riera. (Firmado) Rafael Fabián.''

La demandada es viuda de don José Dimas Riera, es conocida por Pepita y su hermano don Antonio Macías es su apoderado.

La demandada presentó como prueba una carta de su acreedor que dice así:

''Olegario Riera Cifuentes, Paseo de la Castellana, 49, Apartado de Correos 6005, Madrid, Madrid 29 de abril de 1924.—Sr. don Antonio B. Macías, San Juan, P. R.—Estimado Antonio: He recibido tu carta del 25 del mes ppdo. en la que me hablas de tu entrevista con don Rafael y de la situación poco satisfactoria en que te hallas. Realmente es de sentirse que teniendo el azúcar un precio tan subido, lo que necesariamente mejora la situación económica de ese país, sigas tú con los mismos apuros de siempre. La confianza en los bancos ha renacido, la capacidad económica de los valores azucareros es satisfactoria, el crédito se ha consolidado y esto debe ayudarte poderosamente a solucionar toda dificultad de orden económico. En estos momentos de relativo auge debes salir adelante y sanear el capital de la sucesión. Cada vez que le escribo a don Rafael le encargo con el mayor interés que te ayude y te facilite cuanto esté a su alcance para lo que puedas necesitar. Igual recomendación hice cuando hablé con él. Ahora bien, yo no pretendo que al vender las acciones de Pasto Viejo que se me dieron en garantía me remitas su importe; por el contrario, puedes disponer de él para abonarlo a la cuenta de los bancos a fin de que te prorroguen las obligaciones. La garantía que suponen esas acciones puedes suplirla con otro papel de Pepita, de este modo podrás esperar mejor oportunidad para realizar los demás valores, si es que, como dices, aun siguen depreciados. Lo que yo le dije a don Rafael es que no podría mandarte más dinero sin que se hablara nada del que ya te había remitido. De todos modos, avístate con don Rafael y entre ambos resolver lo que mejor creáis pues con ese fin le escribo hoy a dicho señor. Mis cariñosos recuerdos para toda la familia y queda tuyo afmo. amigo, (firmado) Olegario Riera.''

En el año 1926 el demandante don Olegario Riera envió un apoderado suyo desde España a esta Isla, don Edmundo García, con el encargo de cobrar dichos $50,000 y sus inte-

reses. Ese apoderado gestionó el pago de la expresada cantidad pero se le contestó que no estaba vencida la deuda porque el pagaré no tenía fecha para el pago y se le hicieron algunas proposiciones de arreglo que él exigió se le dieran por escrito para llevarlas a don Olegario Riera. Y en efecto le fueron entregadas por escrito las que copiamos:

"Proposición de transacción en cuanto del crédito de $50,000.00, a favor de don Olegario Riera y contra doña Josefina B. Macías Viuda de Riera.

"Sin que en forma alguna se entienda que la señora Viuda de Riera da por fijado o por expirado el término para el vencimiento de la obligación suscrita a don Olegario Riera, cuyo término entiende que no está ni fijado ni expirado, y sin que pueda tampoco entenderse que renuncia a derecho alguno nacido de tal contrato, con el propósito de transigir esta diferencia, hace las siguientes proposiciones:

"PRIMERA: en pago de la obligación a favor de don Olegario Riera, según el documento de fecha 18 de junio de 1923, doña Josefina B. Macías Viuda de Riera, dará a don Olegario Riera cincuenta (50) acciones de la Central Cambalache; ciento cincuenta (150) acciones del Banco Territorial y Agrícola de Puerto Rico, y una obligación por cinco mil (5,000) dollars, a vencer dentro de un año.

"SEGUNDA: Pagar de contado quince mil ($15,000.00) dollars y el resto hasta cincuenta mil ($50,000.00) dollars en un plazo de tres años, con intereses al seis por ciento anual para dicho balance.

"San Juan, P. R., septiembre 17, 1926.

"(Firmado) Josefina B. Vda. de Riera.

"(Firmado) pp. Antonio B. Macías.

"(Tiene el número 2863)."

Embarcó el apoderado García para España y en primero de noviembre de 1926 recibió don Luis Venegas, apoderado aquí de don Olegario Riera, un cablegrama en que éste le dijo: "Aceptada primera proposición documento Josefina Macías. Suplico recoja valores depositándolos banco mi nombre. Avise entrega. Olegario Riera." También recibió la demandada de don Edmundo García el siguiente cablegrama: "Olegario aceptó primera proposición Pepita. Entreguen valores Venegas. Correo amplios detalles demás asuntos. Edmundo." Inmediatamente el Sr. Venegas habló

con el Sr. Macías, le comunicó el cablegrama por él recibido y lo requirió para la entrega de los documentos especificados en la proposición primera aceptada por don Olegario pero no le fueron entregados esos documentos porque, según declaró Venegas, le contestó Macías que el Sr. Edmundo García había tenido con él cierto entendido mediante el cual la entrega de esos valores, el cumplimiento de esa proposición, estaba afecto por parte del Sr. Riera a cierta reclamación por parte de los hijos de doña Josefina contra don Olegario en un asunto de bonos de la Central Boca Chica, de Santo Domingo. Como consecuencia de esa manifestación del Sr. Macías, el Sr. Venegas, de acuerdo con Macías, puso un cablegrama a don Olegario Riera en el que le dijo: "Recibido cable. Dice Macías entendido con García fué a base arreglar asunto bonos Bocachica. Dispuesto cumplir primera proposición siempre se cumpla base entendido. Venegas." Al día siguiente recibió Venegas un cablegrama en que se le dijo: "Confidencial. Proceda con documentos original o el de transacción embargo bienes Josefina Macías relacionados primera proposición añadiendo fincas Buenavista y Perla según caso. Consiga fianza casa Ochoa. Correo poderes. Avise resultado. Olegario Riera." En vista de este cablegrama tuvo Venegas otra entrevista con Macías y como éste le dijo que si tenía que entregarle los valores los embargaría por el otro asunto de los hijos de don Pepe Riera con don Olegario, Venegas cablegrafió al Sr. Riera lo siguiente: "Demanda embargo preparada pendiente radicación. Estoy seguro propiedades a embargar serán reembargadas por asunto Bocachica. Prudente consulte su abogado ambas fases asunto avisando lo que deba hacerse. Venegas." Ese cablegrama fué contestado al día siguiente con otro de don Olegario en esta manera: "No importa reembargo consultado asunto Bocachica seguro no tiene razón proceda urgente. Olegario Riera." Telefoneó entonces Venegas al Sr. Macías en vista de ese despacho que tendría que presen-

tarse la demanda y embargar, lo que hizo con el propósito de ver si entregaban los valores y se evitaba el disgusto, pues hasta el último momento, hasta que se presentó la demanda estuvo dispuesto a aceptarlos y que se cumpliera la transacción. Después de lo expuesto la demanda fué radicada y fué puesto el despacho cablegráfico siguiente al Sr. Riera: "San Juan, P. R., Nov. 17, 1926.—Olegario Riera, Castellana 51, Madrid, Spain.—Radicada demanda sábado último, embargadas Perla participación Buenavista acciones Cambalache y Territorial. Venegas."

El Sr. Macías declaró en el juicio que Edmundo García le manifestó que las proposiciones de arreglo que le hiciera las pusiera por escrito: que cuando le entregó la proposición escrita que hizo, ese mismo día manifestó al Sr. García que había pendiente una reclamación de los bienes de don José Riera por unos bonos de la Central Boca Chica pertenecientes a ellos contra don Olegario, contestándole García que trataría ese asunto con don Olegario para que se arreglase; que al ser requerido por Venegas para el cumplimiento de la proposición aceptada por don Olegario le dijo que estaba dispuesto a cumplirla pero que había quedado con Edmundo García en considerar lo otro de Boca Chica y que Edmundo García en su cablegrama le había dicho "correo amplios detalles demás asuntos"; que estaba dispuesto a cumplir el convenio pero esperaba que se diera alguna solución a lo de Boca Chica, de lo que nunca recibió aquellos detalles; que la cuestión de los bonos de Boca Chica no figuró en las proposiciones de transacción que entregó; que no lo puso como condición porque él dijo a García que lo tratara con don Olegario y por eso esperaba que le dijeran sobre ese asunto; que no era una condición para la entrega de los valores; y que no los entregó porque esperaba los detalles ofrecidos en el cablegrama que recibió.

Venegas declaró que Macías le habló del asunto de Boca Chica.

Don Edmundo García declaró por deposición que cuando vino a esta Isla a cobrar los $50,000 debidos a don Olegario Riera ninguna persona le habló de otras condiciones que las consignadas en el documento con proposiciones de pago que le fué entregado; y que ofreció a la señora viuda de Riera escribirle a su llegada a Madrid sobre otros asuntos provenientes de negocios de la República Dominicana que eran completamente ajenos al asunto que lo trajo aquí y que ese ofrecimiento lo ratificó por cable y en carta; que no le consta que en la fecha de las proposiciones de pago tuviera don Olegario reclamaciones pendientes sobre títulos de Boca Chica o por otros conceptos; què doña Josefina se negó al pago de los $50,000 alegando que no tenía vencimiento y que cuando estaban preparando la demanda y la petición de embargo la deudora, por conducto de su abogado, le hizo las dos proposiciones de pago por escrito.

Don Olegario Riera y Cifuentes declaró que estando en Madrid, España, ordenó a don Rafael Fabián que entregara $50,000 a doña Josefina, que la obligación quedara bien garantizada y que extendiera el documento de modo que pudiera hacerlo efectivo en cualquier momento a su comodidad; que nunca se obligó a entregar los valores que garantizaban el pagaré, si bien por liberalidad y queriendo favorecer a la deudora como lo había hecho al concederle el préstamo de que se trata y otras atenciones de importancia, consintió en que pudiera disponer de algunos de dichos valores para que saliera de sus agobios económicos aprovechando la buena cotización que entonces tenían pero a condición de que ese papel fuese substituído por otro; que al regresar a España Edmundo García no le manifestó que hubiera alguna otra condición de arreglo fuera de las consignadas en el documento que exigiera la deudora o su apoderado para cumplir las predichas proposiciones de pago; y que en esa fecha no tenía compromisos, negocios ni reclamaciones pendientes de

la sucesión de don José Dimas Riera por asuntos de Boca Chica ni por ningún otro concepto.

Como la existencia de la deuda de $50,000 a favor del apelante está aceptada, entendemos que la cuestión primera y fundamental a resolver en este pleito es si ha sido substituída o novada por la primera de las proposiciones de pago hecha por la deudora y aceptada por el acreedor por la que se estipuló que como pago de los $50,000 se entregarían, desde luego, al acreedor determinado número de acciones de la Central Cambalache y del Banco Territorial y Agrícola, más una obligación por $5,000 a vencer dentro de un año.

 Las proposiciones de pago de los $50,000 debidos por la demandada, hechas por ésta a su acreedor, una vez aceptada por él cualquiera de ellas, como lo fué en este caso la primera, constituyó el contrato de transacción definido en el artículo 1711 del Código Civil porque por él y para evitar el pleito de cobro de esa deuda aceptó el acreedor que en vez de pagársele dinero por su crédito y los intereses se le entregasen las acciones que propuso su deudora; y ésta por su parte se avino a pagar desde luego, a pesar de entender que su obligación no estaba vencida; contrato que es bilateral y de obligaciones recíprocas porque de él surgen para ambos contratantes. Manresa, tomo 12, pág. 99.

De acuerdo con esa proposición de transacción aceptada, la deudora se obligó a entregar, desde luego, a su acreedor las especificadas acciones y el pagaré y el acreedor se obligó a recibir esa forma de pago de los $50,000 que se le debían y de sus intereses.

¿Cumplieron las partes las respectivas obligaciones que nacían de ese contrato de transacción? El acreedor cumplió la suya, pues al aceptar la transacción propuesta por su deudora ordenó a su apoderado en esta Isla que recibiese dichas acciones y pagaré.

¿Cumplió la deudora la suya? Ella y la corte sentenciadora entienden que sí porque el apoderado de la deman-

dada ha declarado que siempre ha estado dispuesto a entregar dichas acciones y pagaré. Sin embargo, por la relación de hechos consignada al principio de esta opinión sabemos por las declaraciones contestes del Sr. Macías y de don Edmundo García que éste manifestó a aquél que cualquiera proposición de arreglo que se le hiciera para el pago de los $50,000 debía constar por escrito; que en esta forma se le hicieron las dos proposiciones de transacción; y que de ese documento no aparece que fuera condición para cualquiera de ellas que había de quedar solucionada una reclamación que los hijos de la demandada creían tener contra don Olegario Riera por ciertos bonos de la Central Boca Chica. También sabemos que Macías dijo a García que hablase a don Olegario sobre el asunto de Boca Chica y que Macías reconoce en su declaración en el juicio que ese asunto no era condición para la transacción propuesta. A pesar de esto, cuando el Sr. Venegas comunicó a Macías la aceptación por don Olegario de la proposición primera y lo requirió para que su hermana entregase el pagaré y las acciones convenidas, el Sr. Macías en vez de entregarlas, como era la obligación de la deudora, le manifestó que el cumplimiento de tal proposición estaba afecto al asunto de Boca Chica; que Edmundo García le decía en su cablegrama que por correo le daría ''amplios detalles demás asuntos'' y estuvo de acuerdo con Venegas en que se le pusiera un cablegrama diciéndole a don Olegario que según Macías el entendido con García fué a base de arreglar el asunto de los bonos de Boca Chica, condición que don Edmundo García ha negado.

Esa conducta del Sr. Macías como apoderado de la deudora nos convence de que ella no cumplió la obligación que tenía de entregar las acciones y el pagaré cuando fué requerido para ello por el Sr. Venegas, bajo el pretexto de que había que terminar también el asunto de Santo Domingo, que no fué condición sometida por escrito a don Olegario como requirió su apoderado García y que en verdad no fué

condición de la transacción. Es más, unos ocho días después, cuando el Sr. Venegas tenía orden de que se presentase la demanda y de que se hiciese embargo, quiso Venegas dar otra oportunidad a la deudora para que cumpliese su obligación aceptada por ella en la proposición de arreglo, y el Sr. Macías también se negó a entregar dichos documentos. ¿Cómo puede, pues, decirse y declararse que siempre ha estado dispuesta a cumplir la transacción?

Veamos ahora las consecuencias de no haber cumplido la deudora y demandada la obligación que tenía por el contrato de transacción de entregar el pagaré y determinadas acciones.

Al tener noticia don Olegario de que tales documentos no habían sido entregados al Sr. Venegas ordenó que se presentase la demanda, como se hizo, para cobrar los $50,000 consignados en el pagaré de 1923 y sus intereses, dando así por rescindida su aceptación al contrato de transacción.

Los artículos 1067 y 1091 del Código Civil, en lo necesario en cuanto al primero, dicen así:

"Art. 1067.—Incurren en mora los obligados a entregar o hacer alguna cosa desde que el acreedor les exija judicial o extrajudicialmente el cumplimiento de su obligación.

 \* \* \* \* \* \* \*

"En las obligaciones recíprocas ninguno de los obligados incurre en mora si el otro no cumple o no se allana a cumplir debidamente lo que le incumbe. Desde que uno de los obligados cumple su obligación, empieza la mora para el otro.

"Art. 1091.—La facultad de resolver las obligaciones se entiende implícita en las recíprocas, para el caso de que uno de los obligados no cumpliere lo que le incumbe.

"El perjudicado podrá escoger entre exigir el cumplimiento o la resolución de la obligación, con el resarcimiento de daños y abono de intereses en ambos casos. También podrá pedir la resolución, aun después de haber optado por el cumplimiento, cuando éste resultare imposible.

"El tribunal decretará la resolución que se reclame, a no haber causas justificadas que le autoricen para señalar plazo.

"Esto se entiende sin perjuicio de los derechos de terceros adqui-

rentes, con arreglo a los artículos 1262 y 1265 y las disposiciones de la Ley Hipotecaria.''

De acuerdo con esos preceptos, por haber cumplido el demandante su obligación en el contrato de transacción y por no haber cumplido la suya la deudora, aquél tenía el derecho de dar por rescindido dicho contrato. En la sentencia del Tribunal Supremo de España de 4 de enero de 1866 se declaró que el que no cumple la obligación que se impuso en su compromiso no tiene derecho a exigir, siendo mutuos y correlativos los deberes, que la otra parte haga lo que se comprometió a hacer; y en la de 17 de diciembre de 1869 que el incumplimiento o contravención a las condiciones de un contrato produce su rescisión. Por consiguiente, pudo en esta circunstancia don Olegario Riera dar por rescindido el contrato de transacción y ejercitar su acción en cobro de los $50,000; y rescindido ese contrato deja de existir la transacción y la novación que ésta hubiera causado de haber quedado subsistente aquél.

En el contrato original de 1923 en que la demandada reconoció deber $50,000 al demandante no se hizo constar la fecha en que el pago sería hecho. En la demanda se solicita que la corte declare vencida esa obligación desde el primero de julio de 1924 o que le fije un plazo y condene a pagar la deuda el día que la corte fije. El fundamento de la primera petición es el número tercero del artículo 1096 del Código Civil, que dice así:

''Art. 1096.—Perderá el deudor todo derecho a utilizar el plazo:
''1. * * * * * *
''2. * * * * * *
''3. Cuando por actos propios hubiese disminuído aquellas garantías después de establecidas, y cuando por caso fortuito desaparecieran, a menos que sean inmediatamente substituídas por otras nuevas e igualmente seguras.''

Aunque en el pagaré se convino que la deudora podría vender todas o parte de las acciones dadas en garantía para

pagar toda la deuda o parte de ella, sin embargo, por la carta de don Olegario Riera de 29 de abril de 1924 presentada en el juicio por la demandada y que hemos copiado, puede verse la situación económica poco satisfactoria de la demandada en esa fecha, y deducirse que se le pidió que entregara algunas de las acciones pignoradas para atender a otras obligaciones, pues dice la carta que no pretende que al vender las acciones de Pasto Viejo que se le dieron en garantía se le remita su importe, y que dispusiese de él para abonarlo a la cuenta de los bancos; y le dijo que la garantía que suponían esas acciones podía suplirla con otro papel. Como consecuencia de esa carta, el primero de julio de 1924 el depositario de las acciones en garantía, don Rafael Fabián, por orden cablegráfica de don Olegario entregó al Banco Territorial y Agrícola las acciones depositadas de la Central Pasto Viejo y de la Yabucoa por valor de $28,000 para la cancelación de un pagaré por igual cantidad de la viuda de Riera. Esas acciones no fueron substituídas por otras como indicó don Olegario, y así quedó disminuída la garantía por acto propio de la deudora, pues aunque en esa entrega consintió el acreedor, fué con la condición de que fueran substituídas esas acciones por otras, por lo que no puede sostenerse que la disminución de la garantía se debió a acto del acreedor, y, por consiguiente, la deudora perdió su derecho a utilizar el plazo que la corte pudiera fijar por no tenerlo la obligación, y la deuda era exigible desde entonces, de acuerdo con el artículo 1096 citado.

*En vista de las conclusiones a que hemos llegado debe revocarse la sentencia apelada y dictarse otra declarando con lugar la demanda y sin lugar la contrademanda, con las costas a la demandada por haber procedido temerariamente en este pleito.*

El Juez Asociado Señor Texidor no intervino.