# 95 DTA 147

## TRIBUNAL DE CIRCUITO DE APELACIONES
## CIRCUITO REGIONAL II - BAYAMON I

RAMON SANTIAGO FELICIANO
Apelante

v.

ARACELIS CASILLAS CASILLAS
Apelado

Núm. KLAN-95-00194

San Juan, Puerto Rico, a 22 de mayo de 1995

Panel integrado por su presidente, Juez Arbona Lago
y los Jueces Giménez Muñoz y Salas Soler

Arbona Lago, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

### Hechos

Mediante sentencia de divorcio por la causal de mutuo consentimiento el 26 de julio de 1991 los aquí litigantes dieron término al matrimonio que los unía, bajo el régimen de sociedad de gananciales (Sentencia RF90-4684, RF90-4558, Hon. Edwin Meléndez Grillasca, J.).

En dicho trámite también se dispuso en cuanto la liquidación de los bienes gananciales, conforme requiere la norma de *Figueroa Ferrer v. E L A.,* D.P.R. 250 (1978) y la sentencia advino final y firme. Las partes litigantes luego comparecieron el 22 de octubre de 1991, ante el notario Don Luis G. Pérez Centeno y mediante la escritura número 18, de Liquidación de Sociedad de Gananciales, otorgada en la ciudad de Bayamón, partieron los gananciales conforme la estipulación y la ya mencionada sentencia. A este respecto, la escritura de referencia sólo sirve como vehículo para llevar al Registro de la Propiedad la liquidación de la sociedad de gananciales anteriormente concluida. Las partes pudieron haber utilizado copia certificada de la sentencia, de ésta haber cumplido con todos los requisitos de la Ley Hipotecaria, en su defecto, acudieron a la escritura señalada. Artículo 42 de la Ley Hipotecaria, 30 L.P.R.A. 2205 y Artículo 56.1 de su Reglamento. Los bienes gananciales que nos ocupan quedaron circunscritos a un inmueble residencial, sito en la Urb. Villa Rica del Barrio Hato Tejas de Bayamón. Los ahora litigantes acordaron en la partición que el valor neto residual del inmueble, luego de deducido el gravamen hipotecario, ascendió a la suma de $6,000. Por ello, Ramón Santiago Feliciano aceptó recibir la suma de $3,000 en pago neto del valor de su participación y también acordó aplazar el cobro de su haber por el término de un

año a partir del 22 de octubre de 1991, sin abono de intereses.■

Estos términos que atienden la división de los bienes gananciales son parte integrante e inseparables de la sentencia de divorcio, por mandato expreso de la norma de *Figueroa Ferrer v. E.L.A., supra.* Se trata de un asunto de máximo interés del Estado conforme manifestación de política pública de mucho tiempo, que en un principio sólo atendía el estado civil y que bajo la norma de *Figueroa Ferrer, supra,* se extiende también a la partición de bienes gananciales cuando se solicita la ruptura del vínculo por consentimiento mutuo. Conforme a dicha norma se persigue proteger a la ciudadanía de presiones indebidas.

Vencida la deuda y precio aplazado de $3,000, la señora Casillas se retrasó en el pago, incurriendo así en mora. El señor Santiago Feliciano residía para dicha fecha en el Estado de Washington, E.U.A. Posteriormente, y todavía en mora la señora Casillas, el señor Santiago Feliciano se trasladó a Puerto Rico y en vez de reclamar el pago de los $3,000.00 adeudado más intereses por mora, informó que cambió de parecer y que no interesaba ya los $3,000 y sí la resolución del contrato mediante el cual se llevó a cabo la partición de bienes gananciales y a tal efecto, el 17 de diciembre de 1993, expuso ante el Tribunal de Instancia, en la causa DAC93-0745: *"El demandante quiere volver a ser co-propietario del inmueble objeto de la demanda y aparecer como tal en el registro de la propiedad. Su interés no es recibir los $3,000 que se estipularon en la escritura de liquidación. El incumplimiento de la demandada, y el lapso de tiempo que ha transcurrido, ocasionó que el demandante haya cambiado de parecer. Es por eso que éste esta solicitando el (sic) Honorable Tribunal que ordene al Registrador de la Propiedad a cancelar la escritura que traslada el dominio total del inmueble a la demandada.*

*Disuelta la sociedad legal de bienes gananciales (en este caso lo está ya mediante sentencia firme de divorcio), la situación jurídica resultante se rige por los preceptos de la comunidad de bienes ordinaria. García v. Montero Saldaña, 107 D.P.R. 319 (1978); Calvo v. Aragones, 115 D.P.R. 219.*

*La situación original antes de otorgarse la escritura de liquidación era el de una comunidad de bienes. Ese es el estado que el demandante quiere que se restablezca, ya que tiene otros intereses y planes para con el bien inmueble en la actualidad."*

Desde el 27 de agosto de 1993 la señora Casillas tenía y ofrecía al señor Santiago Feliciano el cheque de gerente 1058292 del Citibank, N.A. Puerto Rico, por la suma de $3,000 el cual Santiago Feliciano rechazó aceptar. El 8 de noviembre de 1993 Santiago Feliciano demandó a la señora Casillas en la causa de cobro de dinero DAC93-0745 señalada por incumplimiento de contrato.

Luego de trámite no necesario aquí relacionar, instancia dictó sentencia sumaria el 2 de febrero de 1995 (Hon. César N. Cordero Rabell, J.) desestimando la demanda e imponiendo al demandante el pago de las costas, más la suma de $500 para honorarios de abogado. De dicho dictamen acude en tiempo el apelante ante nos, imputando la comisión de dos errores:

*"ERRO EL HONORABLE TRIBUNAL DE INSTANCIA AL DETERMINAR QUE EL APELANTE NO TENIA DERECHO A SOLICITAR LA RESOLUCION DE LA OBLIGACION CONTENIDA EN LA ESTIPULACION SOBRE DIVORCIO Y EN LA ESCRITURA DE LIQUIDACION DE SOCIEDAD DE BIENES GANANCIALES, A PESAR DEL INCUMPLIMIENTO DE LA PARTE APELADA. ERRO EL HONORABLE TRIBUNAL DE INSTANCIA AL IMPONER AL APELANTE EL PAGO DE $500.00 EN CONCEPTO DE HONORARIOS DE ABOGADO POR TEMERIDAD."*

## Resolución

El escrito de apelación presentado el 10 de marzo de 1995 cuenta con un extenso índice con copia de los trámites de instancia importantes para nuestra apreciación del asunto en litigio. Ninguna de las partes ha interesado la confección de la exposición narrativa y entendemos que la extensa relación de hechos contenida en el escrito de apelación es suficiente para poder apreciar en su justa prespectiva la situación de derecho a que se contrae este trámite apelativo. Por el resultado a que llegamos no es preciso esperar o solicitar alegato de la parte apelada, por lo que en aras de la economía procesal total (tribunal y abogados) debemos disponer.

Atendidos exclusivamente los errores que en apelación se imputan, entendemos que no le asiste la razón a la parte apelante y que la sentencia dictada en instancia debe sostenerse en su totalidad.

Por dos razones primordiales no queda al alcance del apelante resolver el acuerdo por el cual se liquidó la sociedad de gananciales de marras.

Bastaría con señalar que bajo la norma de *Figueroa Ferrer v. E.L.A., supra,* así como la de la jurisprudencia posterior que reitera lo allí resuelto *Joan Kathleen Magee v. Carlos Ariel Alberro,* **90 J.T.S. 61,** tal asunto divisorio no queda a la sola potestad de los peticionarios. Específicamente en cuanto al aspecto de la división de bienes en *Figueroa Ferrer, supra,* se dispuso que *"...[c]omo medida adicional que tienda a garantizar que ha mediado debida deliberación no se aceptará petición alguna de divorcio bajo los principios enunciados sin que las partes adjunten las estipulaciones correspondientes sobre la división de sus bienes,...",* págs. 276-277. En lo que respecta al carácter de las estipulaciones por razón de un divorcio por consentimiento mutuo, se ha resuelto que las mismas constituyen un contrato de transacción que obliga a las partes. *Negrón Rivera y Bonilla, Ex parte,* 120 D.P.R. 61 (1987).

En el caso particular de la estipulación que acompaña la petición de divorcio por consentimiento mutuo, la misma constituye el contrato de transacción entre los esposos, mediante el cual se coloca al Tribunal en posición de resolver si procede decretar con lugar dicha petición y ponerle fin al matrimonio. Es pues, una transacción judicial habida cuenta de que se incorpora al proceso y es requisito indispensable para que la petición se trámite. El Artículo 1715 del Código Civil, 31 L.P.R.A. sec. 4827, regula el efecto de la transacción dándole carácter de cosa juzgada para las partes y si es una transacción judicial, como la que nos ocupa, le reconoce la vía de apremio como medio para hacerla efectiva, tal como si se tratara de una sentencia final y firme. *Meca Mortgage v. A & W Developers S.E.,* **95 J.T.S. 10**.

Precisamente, en *Meca Mortgage, supra* se atendió la controversia de si *"¿Existe la posibilidad de que al contrato de transacción le aplique la facultad resolutoria que le concede el Artículo 1077 del Código Civil, 31 L.P.R.A. sec. 3052, a la parte perjudicada por el incumplimiento de un contrato?"* (nota al calce omitida).

Al resolver la controversia en la afirmativa, nuestro Tribunal Supremo acogió la doctrina mayoritaria española, la cual acepta que a la transacción le aplican las reglas generales de extinción de los contratos, por lo que una parte puede solicitar y obtener su resolución por el incumplimiento de la otra. Además el Tribunal reafirmó lo resuelto en *Riera v. Macías Vda. de Riera,* 42 DPR 579, 589-590 (1931) y *Alvarado v. Bonilla,* 86 DPR 490, 502 (1962), donde se aceptó que de ordinario el incumplimiento o contravención con las condiciones de un contrato de transacción produce su resolución, no obstante se aclaró *"que si se trata de una transacción judicial y una de las partes no cumple con lo estipulado, como regla general, no procede la resolución. En estos casos, se puede solicitar inmediatamente que lo*

*convenido se lleve a efecto, pues tiene para las partes la misma fuerza que la sentencia firme* *y se puede por lo tanto, utilizar el procedimiento de apremio."* (Enfasis suplido).

Entendemos que en el caso particular de la estipulación en ocasión de un divorcio por consentimiento mutuo, donde tal estipulación es requisito *"sine qua non"* para su trámite, la norma general se impone con mayor fuerza. De lo contrario, si se permitiera resolver la estipulación en cuanto a la división de bienes gananciales por razón de retraso en el incumplimiento posterior del acuerdo, como interesa el demandante-apelante se vulneraría el claro mandato al efecto de que en todo divorcio por consentimiento mutuo pase también por el tamiz judicial la división de los bienes gananciales. En consideración a lo anteriormente expuesto, entendemos que el apelante Santiago Feliciano no puede pretender *"ex propio vigore"* mantener disuelto el vínculo matrimonial y a su vez retrotraer a una comunidad ordinaria lo que fue y es liquidación de bienes gananciales, judicialmente refrendado. Por imperativo de ley esto no queda al alcance exclusivo del Artículo 1077 del Código Civil, *supra*, que atiende obligaciones recíprocas, en las que no se contempla la ingerencia del Estado, como sucede --por razones de política pública█-- en la liquidación que ahora nos ocupa.

**II**

Siendo suficiente lo señalado para conformar el dictamen apelado, no nos referiremos *"in extenso"* a la situación jurídica ante nos si ésta estuviere únicamente gobernada por el Artículo 1077 del Código Civil, 31 L.P.R.A. 3052. No obstante, con ánimo de aclarar y evitar en lo posible la prolongación de este litigio entre estos dos ciudadanos, apuntamos lo siguiente:

La estipulación habida cumplió en cuanto a las co-prestaciones se refiere y el hecho de que el precio de $3,000 se aplazase, no borra el *"quid pro quo"*. Meramente contempla un pago aplazado, el que por falta de establecer interés no lo tiene, hasta en caso de mora. Por lo tanto, la falta de pago a su vencimiento no *"... tiene el efecto jurídico de invalidar 'ab-initio' la obligación contraída, restituyendo las cosas a su lugar y grado antes del otorgamiento del contrato" como pretende el demandante. A falta de pago a su vencimiento sólo corresponde el cobro de la obligación por vía de apremio:*

*"No se deberán intereses sino cuando expresamente se hubiesen pactado." Artículo 1646, Código Civil, 31 L.P.R.A. 4573.*

*"Si la obligación consistiere en el pago de una cantidad de dinero y el deudor incurriere en mora, la indemnización de daños y perjuicios, no habiendo pacto en contrario, consistirá en el pago de los intereses convenidos, y a falta de convenio, en el interés legal." Artículo 1061, Código Civil, 31 L.P.R.A. 3025."*

Tal indemnización de intereses moratorios queda también renunciada si no se reclama. *Rivera v. Crescioni,* 77 D.P.R. 47 (1954). Puede la demandada quedar relevada de tal deuda acudiendo a la consignación, véase Arts. 1130-1135 del Código Civil, 31 L.P.R.A. 3180-3185.

**III**

Ante lo expuesto, no encontramos que el ilustrado foro de instancia haya incurrido en abuso de discreción en la imposición de honorarios. Todo lo contrario, los autos demuestran un excelente y encomiable manejo de la carga judicial; sabio dentro de la abrumadora y agotadora carga que desde hace muchos años agobia a nuestro Tribunal de Primera Instancia.

Se confirma la sentencia apelada en su totalidad.

Así lo pronunció y manda el Tribunal y lo certifica la Secretaria General.

**ESCOLIOS 95 DTA 147**

**1.** Notamos que en la estipulación de partición de bienes gananciales adscrita al trámite de divorcio por mutuo consentimiento se estableció un término de 6 meses para el pago del precio aplazado. En la escritura posterior se consignó un año. En esta etapa del proceso este asunto no reviste mayor importancia ni varía la ecuación jurídica.

**2.** Sobre este particular se expresó en *Pérez Valdivieso v. León,* 52 D.P.R. 512, 518 (1938) que:

*"La institución del matrimonio, su celebración, régimen y disolución, son cuestiones de interés público que los gobiernos se han reservado siempre el poder de regular."*

En época más reciente en *Cosme v. Marchand,* 121 D.P.R. 225, 234 (1988) se confirmó tal interés al sostener que:

*"Por la importancia que tiene para el Estado la institución del matrimonio, se ha establecido como política pública que, una vez contraído el matrimonio, éste sólo puede ser disuelto de la manera y en los casos específicos reconocidos por la legislatura o la jurisprudencia sobre la materia".* (nota al calce omitida).