PEDRO MORALES COLÓN, demandante y apelado, *v.* IGNACIO FRANCO ALONSO, demandado y apelante.

No. 5506.—*Sometido:* Mayo 28, 1931. *Resuelto:* Noviembre 22, 1932.

*L. Mercader,* abogado del apelante; *A. Rivera Colón,* abogado del apelado.

EL JUEZ ASOCIADO SEÑOR HUTCHISON, emitió la opinión del tribunal.

El demandante obtuvo sentencia contra el demandado, primeramente en una corte municipal y después, luego de un juicio *de novo,* en la corte de distrito, por $500 como exención de hogar seguro. El demandado apela e insiste en que la corte de distrito erró al admitir prueba oral para variar los términos de un. contrato escrito.

Con anterioridad a la iniciación del presente pleito, la propiedad que ahora se alega constituía un hogar seguro había sido vendida en un procedimiento ejecutivo sumario instado por el aquí demandado como acreedor hipotecario. Un contrato subsiguiente de arriendo, otorgado por el acreedor hipotecario (ahora demandado) como arrendador, a favor del anterior deudor (ahora demandante) como arren-

datario, contenía una cláusula que aparentaba ser una manifestación por parte del arrendatario respecto a la inexistencia de cualquier derecho de hogar seguro, ya fuera al tiempo de constituirse la hipoteca o de otorgarse el contrato de arrendamiento, seguida de una renuncia expresa de tal derecho.

La prueba oral en cuestión tendía a demostrar lo que el juez de distrito posteriormente declaró como hechos, acerca de los cuales no parece haber tenido duda alguna, a saber: que el arrendatario no leyó el contrato de arriendo que había sido redactado por el arrendador, sino que confió en lo dicho por éste en cuanto a lo que el documento era; que el arrendatario nada sabía de la cláusula concerniente al derecho de hogar seguro, y no hubiera firmado el documento de haber sabido que contenía tal cláusula; que no hubo conjunción de voluntades sobre este extremo, y, por ende, convenio sobre renuncia; y que el susodicho arrendatario fué inducido por medio de tretas a firmar el documento.

De la relación del caso y opinión emitida por el juez de distrito tomamos el siguiente extracto:

"Fué después de ejecutada la finca del demandante, que convinieron el demandante y su esposa, de una parte, y el demandado y su esposa de la otra, tomar los primeros al segundo en arrendamiento el mismo inmueble. Ese contrato privado, suscrito ante notario, contiene una cláusula, la séptima, por la que aparecen los esposos Miranda Morales manifestando que ni al tiempo de constituir la hipoteca que se ejecutó ni al hacer ese documento tenían constituído derecho de *homestead* sobre la mencionada finca, pero que no obstante si alguno tuvieren hacen renuncia expresa a favor del arrendador de cualquier derecho de *homestead* que pudieran tener sobre la misma.

"En esa cláusula descansa su defensa principal el demandado. El demandante se pronunció en contra de la cláusula y para demostrar su ilegalidad o fraude, declaró, sin ser contradicho, que él y su esposa firmaron el documento sin examinarlo en la confianza de que no contenía otro particular que el referente al arrendamiento, al decirle el demandado cuando éste fué a su casa llevando el documento para la firma: 'Aquí traigo el contrato de arrendamiento, firme en seguida, que no te voy a hacer ninguna cosa', y como tenía confianza en él lo firmó; que tan confiado estuvo en ello que de haberse ente-

rado que el contrato decía que renunciaba el derecho de hogar seguro no lo hubiese firmado, porque tenía allí hacía veinte años su hogar seguro; y que menos aun cuando con anterioridad a este acto y al hacerle el demandado su reclamación, éste le dijo que vendiera la finca para que le diera el dinero que tenía allí empleado y el resto pusiera una casa o comprara un par de cuerdas de terreno para sus hijos.

"La forma en que el demandante declaró, el carácter de sus manifestaciones, la firmeza de las mismas, unidas al aspecto de su integridad y rectitud, no dejaron la más mínima duda en la conciencia del juzgador de que él estaba relatando la verdad de los hechos.

"Las manifestaciones del demandante así expuestas, y unidas a su actitud de no desalojar la finca a pesar del desahucio y de interponer sus reclamaciones ante los tribunales, tomando en cuenta, además, todos los hechos y circunstancias de este caso, nos inclinan a creer que nunca hubo propósito por parte del demandante para renunciar su derecho de *homestead*. De la misma prueba aparece que la minuta del contrato fué redactada por el demandado, sin intervención del demandante, y entregada por aquél al notario Sr. Díaz, quien, tipoescrito ya el documento, acompañó al demandado a la casa del demandante para ser suscrito en su presencia.

"El documento o contrato no es uno otorgado ante notario, en el que tal funcionario dé fe de lo convenido y estipulado, sino un documento privado cuyas firmas fueron reconocidas ante notario por suscribirse ante él. No es un acto notarial. Es sólo un documento autenticado. Y, además, esta clase de renuncias la ley no las considera válidas si no se consignan expresamente en la escritura de traspaso o de hipoteca."

No es éste el caso típico de una parte que, mediante evidencia oral, trata de variar los términos de un contrato escrito bajo el mero pretexto de que no lo leyó. Se trata de un caso de simulación y fraude deliberados, bien establecidos no sólo por la declaración del demandante sino también por todas las circunstancias que rodearon la transacción.

Durante cerca de un cuarto de siglo con anterioridad al fallo de este tribunal en *Dávila* v. *Sotomayor*, 35 D.P.R. 794, la Ley de Hogar Seguro había escapado por igual a la atención de acreedores y deudores hipotecarios. En el caso de autos la hipoteca fué otorgada en 1919. La cantidad del

préstamo era $540. No contenía renuncia del derecho de hogar seguro. Mensualmente se debían pagar intereses a razón del 1 por ciento mensual. Cuando el deudor dejó de pagar los intereses de noviembre y diciembre de 1927, y enero y febrero de 1928, el acreedor entabló un ejecutivo sumario, y en el acto del remate compró la propiedad por $100, que fueron abonados a la cuantía de su crédito.

Enfrentándose al hecho de que el deudor hipotecario tenía derecho a una exención de hogar seguro hasta la suma de $500 y al hecho adicional de que cualquier posibilidad de una renuncia implícita de tal derecho estaba excluída por una disposición estatutaria taxativa, el comprador se propuso realizar mediante subterfugio y fraude lo que no pudo haber logrado por ningún otro medio sin una compensación razonable. Con miras a ese fin efectuó un convenio con el dueño del derecho de hogar seguro para el arrendamiento del terreno por un año, a un canon mensual de $8, con opción de compra por $800 en numerario durante el mismo período, de suerte que el arrendatario buscara a otro comprador a un precio tal que con el producto de la operación le permitiera comprar en otro sitio una o dos cuerdas de terreno para él y su familia. Nada se dijo acerca de admisión alguna en cuanto a la inexistencia del derecho de hogar seguro. Nada se habló acerca de una renuncia de ese derecho. Ello no obstante, el arrendador, al someter al notario los datos para la escritura proyectada, o el notario a instancias del arrendador, injertó en el convenio original celebrado por las partes, o atribuyó al arrendatario, una manifestación de todo punto falsa en torno a la inexistencia del derecho de hogar seguro, seguida de una renuncia expresa de ese derecho, en caso de que lo hubiera. Es inconcebible que el arrendatario, que estaba manteniendo e insistiendo en su derecho de hogar seguro, hiciera semejante manifestación o consintiera tal renuncia sin ninguna verdadera causa o compensación para la misma.

Cuando el arrendador y el notario se detuvieron en casa del arrendatario para obtener su firma iban de prisa. El arrendador dijo: "He venido con el notario para que firme este contrato de arrendamiento y convenio sobre la finca. . . firma en seguida que no te voy a hacer ninguna cosa." Esa manifestación, interpretada a la luz de lo que había pasado entre las partes, quería decir que el convenio oral de arrendamiento y opción había sido elevado al documento escrito que al arrendatario se le pedía firmara. Esta verdad engañosa y a medias equivalía a algo más que la mera ocultación del importante hecho de que el documento también contenía una falsa declaración respecto a la inexistencia de cualquier derecho de hogar seguro y una renuncia expresa de tal derecho. Era, en efecto, una simulación deliberada del propósito primario del arrendador y del elemento más importante del llamado "contrato de arriendo y promesa de venta de finca rústica". Fué solamente debido a esta falsa manifestación, unida a la prisa pretextada y a la afirmación falsa de un propósito de no hacer nada que perjudicara los derechos del arrendatario, que el arrendador logró que aquél le firmara una renuncia expresa de sus derechos de hogar seguro, a guisa de un arrendamiento y opción. Jamás se tuvo la intención de que la regla relativa a evidencia oral suprimiera la verdad acerca de semejante transacción, y no puede ser invocada con éxito para ese fin. La corte de distrito no erró según se alega en el primer señalamiento.

Las otras dos contenciones del apelante son que la corte de distrito erró al no resolver que el demandado estaba impedido por su contrato y por su conducta posterior, y al apreciar la prueba y derivar de ella conclusiones contrarias a derecho. Carecen igualmente de mérito.

*Debe confirmarse la sentencia apelada.*