ANDRÉS ALVARADO, demandante y recurrido, *v.* ANTONIO BONILLA, demandado y recurrente.

*Número:* 15 *Resuelto:* 15 de noviembre de 1962

*Antonio Reyes Delgado* y *Angel E. Rosa*, abogados del recurrente; *Dennis Martínez Irizarry, Rodríguez Ema & Rodríguez Ramón, Rafael A. Escudero, Rodolfo Sequeira* y *Nicolás Jiménez*, abogados del recurrido.

Sala integrada por el Juez Asociado Señor Pérez Pimentel como Presidente de Sala y los Jueces Asociados Señores Rigau y Dávila.

EL JUEZ ASOCIADO SEÑOR PÉREZ PIMENTEL emitió la opinión del Tribunal.

En marzo de 1948 don Demetrio Comulada adquirió por compra una finca rústica de cinco cuerdas de terreno más o menos, sita en el barrio Caimitos de Río Piedras, con dos estructuras de madera y zinc. Por documento privado de fecha 23 de julio de 1952, Comulada se comprometió a vender la referida finca a don Andrés Alvarado dentro del término de dos años por precio de $16,000 pagadero en la siguiente forma: $5,000 en efectivo y los restantes $11,000 en el término de 10 años. Se convino además en dicho documento que hasta que ejercitara su opción Alvarado estaría en posesión de la finca como arrendatario pagando un canon de $106 mensuales y que durante el término de la opción Alvarado tendría el derecho de realizar mejoras e inversiones de todo género en la finca; pero que en caso de no ejercitar su opción o de no pagar los cánones de arrendamiento debía desalojar la finca y Comulada vendría obligado a satisfacerle el precio de las mejoras e inversiones, pero nunca una suma mayor de $5,000 por tal concepto. En virtud de este contrato Alvarado hizo mejoras e inversiones en la finca.

Por la escritura número 1 otorgada en Río Piedras, Puerto Rico, el día 26 de abril de 1954 ante el notario E. L. Belén Trujillo, Alvarado y Comulada rescindieron el convenio de opción de compra y el primero vendió al segundo las mejo-

ras que había introducido en la finca por precio de $5,000. En esa misma escritura número 1, Comulada vendió la finca a Antonio Bonilla por precio de $16,000 de los cuales el comprador pagó $5,000 de contado y los otros $11,000 quedaron aplazados por un año y garantizados con primera hipoteca sobre el inmueble vendido.

Por la escritura número 2, otorgada en igual fecha, 26 de abril de 1954, ante el mismo notario Belén Trujillo, el comprador Antonio Bonilla garantizó con primera hipoteca sobre una finca suya sita en Arecibo, un pagaré que había librado a favor del portador del mismo por la suma de $17,000.

En octubre de 1954, Alvarado inició una acción en cobro de dinero contra Antonio Bonilla. En la demanda enmendada alegó en síntesis, que a pesar de lo consignado en la escritura número 1 de 26 de abril de 1954, otorgada ante el notario E. L. Belén Trujillo, "lo cierto era que las partes antes de ir ante el notario, habían acordado que los demandados le entregarían al demandante un pagaré hipotecario por $17,000 a vencer el día 1 de octubre de 1954 sobre una finca del demandado en Arecibo, que era el precio en que habían valorado las mejoras de la finca y la casa de los demandantes...;" que la venta de dichas mejoras a Comulada era ficticia y se hizo para facilitar la transacción; que el mismo día 26 de abril de 1954 se otorgó por el demandado un pagaré por $17,000 al portador, el cual convino en inscribirlo en el Registro de la Propiedad y lo entregaría al demandante como prueba de la deuda contraída, cosa que nunca hizo; que en junio de 1954 canceló el mencionado pagaré; que el demandado siempre ha reconocido su deuda pero nunca la ha satisfecho.

El demandado contestó negando los hechos esenciales excepto que admitió haber otorgado el pagaré por $17,000 con el propósito de levantar fondos para pagar el precio de $16,000 de la finca, lo que se hizo innecesario una vez el vendedor aceptó aplazar $11,000 por un año por lo que procedió a can-

celar dicho pagaré. Alegó que la escritura número 1 tantas veces mencionada refleja la verdadera transacción afectuada entre las partes y que el demandante estaba impedido legalmente de reclamar una suma que ya había cobrado. Además, reconvencionó.

El tribunal a quo dictó sentencia declarando con lugar la demanda, luego de formular las siguientes conclusiones de hecho:

"1.—A principio del año 1954, el demandado Antonio Bonilla por sí y por mediación de los señores José Carbonel y Eduardo Dávila estuvo realizando gestiones a fin de adquirir una finca rústica más o menos pequeña en las inmediaciones de Río Piedras para dedicarla a su negocio de compra y venta de piezas usadas de automóviles y maquinaria y equipo excedente de guerra.

"2.—El día 16 de abril de 1954 (Viernes Santo) el demandado señor Antonio Bonilla acompañado de su esposa y de los señores Eduardo Dávila y José Carbonel visitaron al demandante señor Andrés Alvarado en su residencia situada en el kilómetro 17, hectómetro 3, de la carretera insular número 1, que conduce de Río Piedras a Caguas, y estuvieron hablando sobre una posible compraventa de la propiedad localizada en dicho sitio durante toda la tarde de ese día. En el tiempo que estos señores estuvieron en la residencia del demandante señor Andrés Alvarado, el demandado señor Antonio Bonilla tuvo oportunidad de examinar, y examinó la finca al igual que la casa en donde residía el señor Alvarado sin que llegaran a ningún acuerdo por pedir el señor Alvarado como precio de venta de dicha finca y estructura donde él residía y tenía su negocio, la suma de cuarenta mil dólares, que luego rebajó a treinta y cinco mil, cuando el señor Antonio Bonilla le hizo una oferta de únicamente treinta y dos mil dólares.

"3.—Al día siguiente por la mañana el señor José Carbonell a nombre del demandado Bonilla, visitó al señor Andrés Alvarado y le informó que el demandado Antonio Bonilla estaba dispuesto a dar por la propiedad la suma de Treinta y Tres Mil Dólares, suma que aceptó el demandante Andrés Alvarado como precio de la compraventa.

"4.—La referida propiedad pertenecía para esa fecha al señor Demetrio Comulada, quien la adquirió por escritura

número 6 otorgada el día 11 de marzo de 1948, ante el Notario Benjamín Rodríguez Ramón. Dicha finca se describe como sigue:

'RÚSTICA: Predio de terreno en el barrio Caimitos de Río Piedras, con una cabida de cinco cuerdas más o menos equivalentes a una hectárea, noventa y seis áreas y cincuenta centiáreas. Linda por el Norte y Este, con quebrada de la Cruz; por el Sur, con don Carlos Blondet; y por el Oeste, con la carretera Central. En dicho solar enclava una casa de madera extranjera, terrera, techada de zinc y una casa dedicada a tienda.'

"5.—Dicha finca la ocupaba el demandante Alvarado, en virtud de un documento privado titulado Convenio de Opción de Compraventa de fecha 23 de julio de 1952, mediante el cual Alvarado entró en posesión de la misma. En dicho convenio, el señor Demetrio Comulada se comprometía a vender al señor Andrés Alvarado la referida finca dentro del término de dos años a contar desde la fecha del documento, por el precio pactado de $16,000.00, pagaderos dichos $16,000.00 en la siguiente forma: $5,000.00 en efectivo y el remanente de $11,000.00 para pagarlo en el término de 10 años a contar desde la fecha en que se otorgara la escritura correspondiente. Se dispuso además en dicho documento que hasta que el señor Alvarado ejercitara la opción, estaría en posesión de la finca en concepto de arrendatario, pagando un canon mensual de $106.00 por mensualidades vencidas, y que durante el término de la opción, el señor Alvarado tendría el derecho de realizar mejoras e inversiones de todo género, pero que de no ejercitar la acción, debería el señor Alvarado desalojar inmediatamente la finca, no estando el señor Comulada obligado a satisfacer al señor Alvarado, no importa su inversión, nada más que $5,000.00 por concepto de dichas mejoras e inversiones. En virtud de dicho contrato el demandante, señor Andrés Alvarado invirtió en mejoras e inversiones a la propiedad.

"6.—En la última semana de abril de 1954 los señores Andrés Alvarado, Antonio Bonilla, Demetrio Comulada, José Carbonel y Eduardo Dávila visitaron la casa del Lcdo. E. L. Belén Trujillo localizada en la Calle Braumbaugh Núm. 355, de Río Piedras, y los señores Bonilla, Comulada y Alvarado explicaron al Lcdo. E. L. Belén Trujillo que interesaban que otorgara una escritura de compraventa del señor Comulada al señor Bonilla

de la finca en cuestión, en donde residía el demandante Alvarado, indicándole al notario que el precio de compraventa sería de $16,000.00, pagaderos $5,000.00 en efectivo y $11,000.00 en una hipoteca sobre la misma propiedad. Le explicaron además que en ese mismo documento debería hacer constar que el señor Andrés Alvarado renunciaba a la opción de compra que tenía sobre esa propiedad y que vendía las mejoras e inversiones que había en ésta al señor Comulada por la suma de $5,000.00. En esa misma ocasión el demandado Bonilla instruyó al Lcdo. E. L. Belén Trujillo que emitiera un pagaré hipotecario al portador por la suma de $17,000.00 sobre una finca suya radicada en la jurisdicción de Arecibo.

"7.—El día 26 de abril de 1954, en la residencia del demandante señor Andrés Alvarado las partes suscribieron las escrituras 1 y 2 de la notaría del Lcdo. E. L. Belén Trujillo, sobre Compraventa y emisión de pagaré hipotecario al portador respectivamente.

"8.—Allí mismo, el demandado Antonio Bonilla le dijo al demandante, en presencia del notario que si él aceptaba quince mil dólares dentro de un mes, no habría necesidad de inscribir la escritura del pagaré, lo que no aceptó el señor Andrés Alvarado.

"9.—Unos días después el demandado Bonilla y el señor Carbonel visitaron al Lcdo. E. L. Belén Trujillo, con motivo de una nota relativa a la finca que le dejara el señor Comulada al Lcdo. E. L. Belén Trujillo, y en ese momento el demandado señor Antonio Bonilla le explicó al Lcdo. E. L. Belén Trujillo que la realidad de los hechos era que él había pagado por la finca referida anteriormente la suma de $33,000.00, aclarándole que de esos $33,000.00, $16,000.00 correspondían al señor Comulada y los $17,000.00 representados por el pagaré, al señor Alvarado.

"10.—El Tribunal concluye que a pesar de lo consignado en la Escritura Núm. 1 otorgada ante el Lcdo. E. L. Belén Trujillo el día 26 de abril de 1954, lo cierto es que la verdadera transacción habida entre las partes consistía en la venta de la propiedad y mejoras al señor Antonio Bonilla por la suma de $33,000.00, precio pactado entre el señor Bonilla y el señor Alvarado, de la cual suma correspondían $16,000.00 al señor Demetrio Comulada y $17,000.00 al señor Andrés Alvarado. Estos últimos $17,000.00 serían pagados por el señor

Bonilla al señor Alvarado dentro del término de 6 meses, devengando intereses a razón del 8 por ciento anual y estarían garantizados por una primera hipoteca sobre una finca del demandado Bonilla, localizada en Arecibo, por lo que el demandado Antonio Bonilla se obligó a constituir dicha hipoteca y a entregar el pagaré por $17,000.00 que conjuntamente con la escritura de venta, se iba a emitir, y que en efecto se emitió, mediante la Escritura Núm. 2 antes referida. Se hace constar que de acuerdo con el convenio de opción que suscribieron el señor Demetrio Comulada y el demandante Andrés Alvarado antes referido, mientras la opción concedida a éste estuviera en vigor, el señor Comulada no tenía derecho a recibir por la propiedad nada más que los $16,000.00 pactados.

"11.—Incumpliendo lo convenido, el demandado señor Antonio Bonilla, nunca inscribió el pagaré hipotecario de diecisiete mil dólares y nunca entregó el mismo al demandante señor Andrés Alvarado; antes por el contrario, el 25 de junio de 1954 requirió del Notario E. L. Belén Trujillo la cancelación del mismo informándole, que en ese mismo día iría a la casa del señor Andrés Alvarado a pagarle la deuda representada por el mismo, mostrándole una suma de dinero. Ni en esa ocasión ni en ninguna otra ocasión posterior, pagó el demandado al demandante el importe de los $17,000.00 convenidos.

"12.—En agosto 9 de 1954 al ir el demandante Andrés Alvarado a recoger su pagaré de $17,000.00 a la oficina del Lcdo. E. L. Belén Trujillo, éste le informó lo inmediatamente precedente, y entonces el demandante Andrés Alvarado salió para Arecibo a ver a Antonio Bonilla. Dos días después, ante la alegación del demandado Antonio Bonilla de que el pagaré no había sido cancelado, el Lcdo. E. L. Belén Trujillo le tuvo que mostrar la escritura de cancelación a los señores Andrés Alvarado y Antonio Bonilla en ocasión de la visita que estos señores hicieron a la oficina del referido notario, admitiéndole entonces el demandado Bonilla al demandante la cancelación del pagaré.

"13.—En ocasiones posteriores hubo conversaciones entre las partes en las cuales el demandante Andrés Alvarado reclamaba el pago de la suma adeudada por el demandado Antonio Bonilla y éste, aceptando siempre la existencia de la deuda, ofrecía arreglos de diversa índole.

"14.—A principios del mes de septiembre de 1954, estuvieron en la oficina del Lcdo. E. L. Belén Trujillo el señor y la

señora Alvarado, el señor Demetrio Comulada, el señor Antonio Bonilla, el señor José C. Orihuela, el señor Eduardo Dávila, el Lcdo. Rafael Hernández Matos y el señor Andrés Alvarado, hijo, y después de una comparación de dos planos de mensura que se habían levantado de la finca en cuestión, uno de ellos preparado por el ingeniero José C. Orihuela y el segundo por los ingenieros Andrés Alvarado hijo, Pedro Cabezudo Pérez, Benjamín Duchesne Landrón y Luis Samuel Piñero y de una amplia consideración en cuanto a la posibilidad de una transacción entre las partes, el demandado señor Antonio Bonilla aceptó pagar al demandante Andrés Alvarado la suma de $14,500.00, comprometiéndose a entregar dentro de unos días al señor Andrés Alvarado la suma de $8,000.00 para una transacción que éste tenía pendiente, y el remanente en fechas futuras.

"15.—El día 9 de septiembre de 1954, el demandante Alvarado fue notificado por el señor Eduardo Dávila, empleado del demandado Bonilla, de que éste, Bonilla, vendría al otro día a pagarle los $14,500.00 convenidos. El día 10 de septiembre, temprano en la mañana, el demandante salió para Arecibo con su esposa y con el referido Eduardo Dávila a quien recogieron en Cataño, para asegurarse del pago por parte de Bonilla en ese día, de suerte que Alvarado pudiese formalizar en ese mismo día determinada operación de compraventa de una finca de la señora Esther Vélez. En esa ocasión Alvarado se vio con Bonilla en su garaje en Arecibo, asegurándole Bonilla que le pagaría el importe adeudado esa misma tarde en su casa en Río Piedras, y entregándole como garantía de su promesa un cheque a su orden por $3,000.00 con instrucciones de que no lo cambiara parque le traería el dinero convenido en cheque certificado.

"16.—Ese mismo día por la noche, o sea, el 10 de septiembre de 1954, se reunieron en la residencia del demandante Andrés Alvarado, la señora Esther Vélez, el señor y la señora Alvarado y el señor y la señora Bonilla. La señora Esther Vélez y el señor Alvarado cerraban la compraventa de una propiedad perteneciente a la primera y el señor Alvarado había prometido pagarle a la señora Vélez los ocho mil dólares que adeudaba de la compraventa, con el dinero que en cheque certificado se había comprometido traer el demandado Antonio Bonilla en cumplimiento de la transacción antes mencionada.

El señor Bonilla trajo en esa ocasión un cheque certificado por la suma de $3,000.00 con varios cheques personales sin certificar a vencerse en fechas futuras y que conjuntamente con el certificado sumaban $8,000.00, los entregó al señor Alvarado quien a su vez los entregó a la señora Vélez. La señora Vélez, no aceptó este medio de pago y devolvió los cheques al señor Alvarado quien a su vez los devolvió al señor Antonio Bonilla, suscitándose entonces una discusión entre el señor Alvarado y el señor Bonilla debido a la reclamación del pago de la deuda por el primero y el incumplimiento de Bonilla a cumplir con lo pactado.

"17.—Desde entonces en adelante el demandado Bonilla se resiste a pagar al demandante Andrés Alvarado la suma adeudada que es objeto de la presente reclamación." (T.A., págs. 3 a 10.)

Por el primer señalamiento se sostiene que fueron erróneas las resoluciones del tribunal sentenciador negándose a eliminar el testimonio del Lcdo. E. L. Belén Trujillo y el del Hon. Rafael Hernández Matos y admitiendo el de doña Martina Romero de Alvarado por ser contrarias a derecho "porque (a) contravienen las disposiciones del Artículo 25 de la Ley de Evidencia (32 L.P.R.A. sec. 1668) vigente en Puerto Rico, (b) violan la regla, universalmente aceptada, determinativa de que no deben admitirse como prueba hechos o circunstancias tendientes a establecer una transacción que no se ha consumado, y, (c) en cuanto permitió al Hon. Rafael Hernández Matos, con nuestra objeción, declarar (pág. 35) que el recurrente Bonilla aceptó ante él haberse comprometido a pagar a Alvarado $17,000 'por renuncia que él había hecho del derecho de opción que tenía sobre la finca,' y, además, por las mejoras que le había introducido".

Como lo insinúa el propio señalamiento, el demandado-recurrente no objetó oportunamente ninguno de los tres testimonios y repreguntó a todos estos testigos. La solicitud para que se eliminase lo declarado por el Lcdo. Belén Trujillo se hizo por escrito luego de éste haber declarado. En cuanto al testimonio del Hon. Hernández Matos se objetó aquella parte

relacionada con la renuncia de la opción y en cuanto a la señora Alvarado, ésta declaró sin objeción sobre los hechos hasta que surgió una objeción a base de la inadmisibilidad de prueba sobre transacciones. El recurrente admite esto pero alega que no tenía que objetar oportunamente porque la regla del "parol evidence" es una regla de derecho sustantivo y no una regla de evidencia. ▮▮▮

No nos detendremos a resolver si el recurrente objetó o no oportunamente la admisión de estos tres testimonios, ni si la admisión de prueba extrínseca para variar los términos de un contrato escrito es una regla de evidencia o de derecho sustantivo o si el recurrente renunció a su objeción ya que consideramos que la prueba en este caso era admisible.(1) Los testimonios objetados tendían a probar, como así lo concluyó el tribunal a quo, que a pesar de que en la susodicha escritura número 1 de compraventa, Alvarado aparecía vendiendo por $5,000 las mejoras a Comulada y renunciando su derecho de opción, lo cierto era que él había acordado venderle dichas mejoras al recurrente Bonilla por la suma de $17,000, siendo lo expresado en la referida escritura una simulación. En otras palabras, estos testimonios tendían a probar la verdadera transacción entre las partes. El artículo 25 de la Ley de Evidencia (32 L.P.R.A. sec. 1668), no impedía que esto se

---

(1) En *Clabaguera* v. *Espéndez*, 61 D.P.R. 689, dijimos que las autoridades están en conflicto en cuanto a si la regla sobre admisión de prueba extrínseca para variar los términos de un contrato escrito debe considerarse como una regla de evidencia o de derecho sustantivo pero que aparentemente el peso de la jurisprudencia sostiene que a menos que se objete y excepcione la presentación de dicha prueba no procede levantar en apelación la cuestión por primera vez. Véase además, *Morales* v. *Díaz*, 24 D.P.R. 739, donde citando los casos de *Calvo* v. *Belber*, 16 D.P.R. 360; *El Pueblo* v. *Alvarado*, 19 D.P.R. 870 y 30 Cyc. 1939–1940, se sostiene que aunque prueba extrínseca inadmisible fuera admitida, la corte tenía derecho a considerarla como que no era prueba, y *Fernández* v. *Rodríguez*, 56 D.P.R. 410, donde se pasó sobre la admisibilidad de la prueba a pesar de que no se objetó oportunamente. En *Sucn. Marrero* v. *Santiago*, 74 D.P.R. 816, se dijo que en el supuesto de que el testimonio no hubiera sido admisible, los demandados renunciaron a la cuestión por ellos suscitada al repreguntar extensamente.

hiciera según hemos resuelto en repetidas ocasiones. En el caso de *Ramírez* v. *Ramírez*, 65 D.P.R. 544, citando los de *Ochoteco* v. *Cardona*, 47 D.P.R. 554, *Morales* v. *Franco*, 44 D.P.R. 66 y *Puig* v. *Sotomayor*, 55 D.P.R. 260, dijimos que la regla de la prueba extrínseca *(parol evidence rule)* no puede ser usada por las partes para suprimir la verdad acerca de una transacción ni para impedir que se demuestre que un convenio escrito es meramente una simulación. Aunque no deben alentarse las simulaciones, la consignada en la escritura de compraventa, no tuvo un propósito ilícito o dañoso, siendo aceptable la explicación de que se hizo así para facilitar la transacción entre las partes.

En *Rossy* v. *Tribunal*, 80 D.P.R. 729, nos expresamos así a la página 749: "Además, no hay duda de que sería admisible prueba para demostrar que la causa expresada en la escritura Núm. 42 de 29 de octubre de 1919 o la consignada en el convenio privado de esa misma fecha no fue la que en verdad indujo a las partes a hacer dichos contratos. Y la regla que excluye evidencia extrínseca para contradecir o variar los términos de un convenio escrito tampoco impide probar cuál fue la verdadera transacción entre las partes, aunque ésta resulte distinta a la que se hizo constar en un documento público o privado. [Citas]." Véase además, *Bigas* v. *Monforte*, 76 D.P.R. 309.

Tampoco le asiste razón al recurrente al afirmar que los testimonios del Lcdo. Belén Trujillo, del Hon. Hernández Matos y la señora Alvarado tienden a establecer que el demandado recurrente intentó transigir con Alvarado una deuda de $17,000 por $14,500, y que tratándose de una oferta de transacción dicha prueba era inadmisible conforme a la doctrina sentada en el caso de *Pueblo* v. *Central Cambalache*, 59 D.P.R. 60, al efecto de que una oferta de transacción hecha por una parte no produce efecto legal alguno, ni puede ser presentada en evidencia contra la otra parte, mientras la otra no la haya aceptado. Lo que la prueba demuestra es que se

trata de un contrato perfecto de transacción que luego el demandado incumplió, no siendo por tanto aplicable la doctrina invocada por el recurrente. Violado dicho contrato, el acreedor podía accionar por la cantidad a que montaba la deuda original. Esto es así porque el incumplimiento o contravención a las condiciones del contrato de transacción aun en el supuesto de que hubo una novación, produjo su resolución y en su consecuencia, dejó de existir. *Riera* v. *Macías Vda. de Riera,* 42 D.P.R. 579; *Sucn. Escalera* v. *Barreto,* 81 D.P.R. 596.

El querellante considera que el tribunal sentenciador también incurrió en error al admitir evidencia sobre la renuncia que hizo el demandante Alvarado a su derecho de opción de compra de la propiedad, como parte de la causa de los $17,000 que el recurrido convino en pagar. Se funda en que tal cuestión no fue suscitada por las alegaciones. La objeción se formuló contra aquella parte del testimonio del Hon. Rafael Hernández Matos relacionado con las manifestaciones que le había hecho Bonilla en la oficina del Lcdo. Belén Trujillo. Declaró el testigo que le había preguntado a Bonilla que por qué había cancelado el pagaré de $17,000 y que como respuesta Bonilla le manifestó que la finca tenía menos cabida que la consignada en el título y que Comulada le había ocultado una anterior expropiación parcial de esa finca y que "aunque él reconocía que la finca era una finca de valor, él tenía derecho a que se le rebajara por Alvarado de los $17,000 que él se comprometió a pagarle por la renuncia que él había hecho de su derecho de opción que tenía sobre la finca y además por las mejoras que él había llevado a efecto en la finca."

La prueba era admisible. La teoría del demandado Bonilla era que él compró la finca a Comulada por el precio de $16,000 y que nada adeudaba al demandante Alvarado. El testimonio del Juez señor Hernández Matos contiene una admisión de Bonilla al efecto de que éste se había comprometido

a pagarle a Alvarado $17,000. Esa admisión era prueba contra Bonilla pertinente a la cuestión suscitada por las alegaciones. Si la renuncia por Alvarado de su derecho de opción formaba o no parte de la causa del contrato, no hacía la prueba inadmisible pues aun cuando no se hubiera alegado tal hecho, la regla 15(b) de Enjuiciamiento Civil([2]) invocada por el demandante mientras se discutía la objeción a la prueba, permitía su admisión y aun cuando se hubiera omitido enmendar las alegaciones, ello no afectaría el resultado del juicio en relación con tal cuestión. Por otra parte consideramos que la admisión de tal evidencia no perjudicó el mantenimiento de la defensa del demandado en sus méritos.

Por el segundo señalamiento de error sostiene el recurrente que la sentencia dictada por el tribunal de instancia es contraria a derecho y a las pruebas porque: (1) No se demostró que Comulada no le comprara y no le pagara las mejoras al demandante recurrido, según éste confesó habérselas vendido y haber recibido su precio en la escritura Núm. 1 otorgada ante el notario Belén Trujillo en 26 de abril de 1954; (2) no se estableció (independientemente de la supuesta transacción por $14,500) que el recurrente Bonilla se comprometiera a pagar al recurrido Alvarado $17,000, o cualquiera otra suma por las alegadas mejoras; (3) si se entendiera probado que el recurrente se obligó para con el recurrido, a pagarle $33,000 por la finca, esta obligación nunca tuvo valor ni surtió efecto porque (a) Alvarado, al negociar con Bonilla, le vendió una finca que no era de él, y (b) en caso que hubiera sido suya, la que le vendió e intentó entregarle, era una distinta a la que él dijo poseer; (4) si en efecto el recurrente convino con el recurrido pagarle sus mejoras en la finca, mediante la entrega de un pagaré al portador por $17,000, esa obligación quedó extinguida o modificada por novación, cuando, por razón de la diferencia en cabida en la finca, Alvarado convino en recibir, y Bonilla aceptó pagar $14,500

---

([2]) Hoy Regla 13.2 de Procedimiento Civil.

sin intereses ni garantía alguna; $8,000 en septiembre 10 de 1954 y $6,500 sin fecha de vencimiento, y (5) el recurrido Alvarado no ha entregado a Bonilla las mejoras que alega le vendiera y se ha incautado de la finca privando de su posesión al recurrente a pesar de que éste pagó de pronto $5,000 al anterior y legítimo dueño de la finca don Demetrio Comulada.

Los motivos alegados bajo los apartados (1) y (2) constituyen un ataque a la apreciación de la prueba. En el récord hay prueba sustancial para sostener la conclusión del tribunal sentenciador al efecto de que Alvarado no vendió las mejoras a Comulada sino que las vendió a Bonilla por $17,000. Esto es especialmente así si se considera que ya resolvimos que los testimonios de Belén Trujillo y del Juez Señor Hernández Matos y el de la señora Romero de Alvarado eran admisibles en evidencia para probar la verdadera transacción realizada por las partes. El conflicto que hubo en la prueba en cuanto a ese hecho fue resuelto en contra del demandado. Su contención no puede prosperar.

El motivo consignado en el apartado (3) parte de una premisa errónea. Alvarado no vendió a Bonilla una finca que no era de él. Fue Comulada quien vendió la finca. Alvarado sólo vendió las mejoras que había introducido en dicha finca. El demandado se obligó a pagar $33,000 por la finca y de esa suma, por convenio entre las partes, correspondían $17,000 a Alvarado como valor de las mejoras. Tampoco es correcto afirmar que Alvarado vendió e intentó entregarle al demandado una finca distinta a la que él dijo poseer. Bonilla compró por precio alzado y antes de hacer el negocio volteó la finca que Alvarado poseía como arrendatario.

Ya hemos dispuesto del motivo consignado en el apartado (4) de este error, cuando resolvimos que habiendo Bonilla incumplido sus obligaciones en el contrato de transacción, Alvarado pudo darlo por resuelto y proceder al cobro del pre-

cio de las mejoras convenido en el contrato original de compraventa. ▮

Tampoco es motivo de error el apuntado bajo el apartado (5). Bonilla no pagó a Alvarado el precio de las mejoras y de conformidad con las disposiciones del artículo 1335 del Código Civil (31 L.P.R.A. sec. 3815) el vendedor no estaría obligado a entregar la cosa vendida, si el comprador no le ha pagado el precio o no se ha señalado en el contrato un plazo para el pago.(³) Véase *Ramos* v. *Avilés*, 58 D.P.R. 726.

El tercer señalamiento de error es como sigue:

"La condena para el pago de intereses, introducida en la Sentencia Original, mediante la enmienda de 23 de julio de 1958, es errónea y contraria a derecho, y si la sentencia recurrida no fuere revocada, ésta debe modificarse eliminándole dicho pronunciamiento." ▮

El error fue cometido. Es cierto que Bonilla no pagó a Alvarado el precio de venta de las mejoras en el plazo convenido, pero también no es menos cierto que el vendedor no ha entregado la cosa vendida al comprador, sino que por el contrario ha continuado disfrutándola desde la fecha del contrato de compraventa. Consagraríamos una injusticia si a tenor con el artículo 1083 del Código Civil resolviéramos que Bonilla incurrió en mora con las consecuencias que señalan los artículos 1054 y 1061 del mismo Código pues en tal caso Alvarado se enriquecería injustamente a expensas de Bonilla.(⁴) Este principio lo habíamos adoptado en el caso de

---

(³) Recuérdese que si bien se fijó un plazo para el pago de las mejoras, dentro del contrato de transacción, el demandante dio por resuelto el mismo y que la demanda está predicada en el contrato original y que Bonilla no pagó el precio en el momento del contrato ni en la fecha fijada en el pagaré hipotecario.

(⁴) Los artículos 1053, 1054 y 1061 del Código Civil (31 L.P.R.A. secs. 3017, 3018 y 3025) disponen:

"§ 3017. Mora; intimación del acreedor.

"Incurren en mora los obligados a entregar o hacer alguna cosa desde que el acreedor les exija judicial o extrajudicialmente el cumplimiento de su obligación.

*Trelles* v. *Suárez*, 49 D.P.R. 551. Después de citar a la pág. 554 un comentario de Manresa al artículo 1053 del Código Civil Español, en el cual dicho comentarista cita la doctrina jurisprudencial al efecto de que no es justo que una de las partes se aproveche de la cosa recibida y de la que a su vez está obligado a entregar, razón por la cual el comprador que no satisfizo el precio, después de recibir la cosa debe pagar intereses por mora, dijimos: "La jurisprudencia establecida por el Tribunal Supremo de España nos da la pauta para interpretar el verdadero alcance del artículo 1053 en armonía con el artículo 1061 del Código Civil. Si no es justo que el comprador se aproveche de la cosa recibida y de la que a su vez está obligado a entregar, tampoco es justo que el vendedor se aproveche de la cosa vendida y de los intereses del dinero que el comprador le deba entregar. Si se permitiera al vendedor disfrutar de ambas cosas se estaría enriqueciendo injustamente a expensas del comprador." No podemos rechazar ahora tan fundamental principio de justicia.

---

"No será, sin embargo, necesaria la intimación del acreedor para que la mora exista:

"1. Cuando la obligación o la ley lo declaren así expresamente.

"2. Cuando de su naturaleza y circunstancias resulte que la designación de la época en que había de entregarse la cosa o hacerse el servicio, fue motivo determinante para establecer la obligación.

"En las obligaciones recíprocas, ninguno de los obligados incurre en mora si el otro no cumple o no se allana a cumplir debidamente lo que le incumbe. Desde que uno de los obligados cumple su obligación empieza la mora para el otro. —Código Civil, 1930, art. 1053.

"§ 3018. Dolo, negligencia o morosidad en el cumplimiento de la obligación

"Quedan sujetos a la indemnización de los daños y perjuicios causados, los que en el cumplimiento de sus obligaciones incurrieren en dolo, negligencia o morosidad, y los que de cualquier modo contravinieren al tenor de aquéllas.—Código Civil 1930, art. 1054.

"§ 3025. Intereses como indemnización en caso de mora

"Si la obligación consistiere en el pago de una cantidad de dinero y el deudor incurriere en mora, la indemnización de daños y perjuicios, no habiendo pacto en contrario, consistirá en el pago de los intereses convenidos, y a falta de convenio, en el interés legal.

"Mientras que no se fije otro por el gobierno se considerará como legal el interés de 6 por 100 al año. —Código Civil, 1930, art. 1061."

Por el cuarto señalamiento sostiene el recurrente que el tribunal sentenciador cometió error al no condenar al recurrido a pagarle por el uso de la finca alquileres a razón de $106 mensuales desde el 26 de abril de 1954 y hasta que se la entregue.

Independientemente del aspecto procesal envuelto en este planteamiento(5) y yendo a los méritos del error planteado, sostiene el recurrente que Comulada traspasó la finca a Bonilla con todo cuanto le es inherente y accesorio, incluyendo las mejoras, y, por tanto, el derecho a cobrar el canon de arrendamiento que Alvarado pagaba a Comulada porque conforme dispone el Artículo 1400 del Código Civil (31 L.P.R.A. sec. 3905), el comprador sustituye al vendedor en todos sus derechos y acciones.

No tiene razón. En primer lugar el argumento se basa en la premisa de que Comulada vendió a Bonilla la finca con sus mejoras en $16,000 pero esa premisa desaparece una vez confirmamos la determinación del tribunal de instancia al efecto de que Comulada vendió la finca a Bonilla y Alvarado a su vez vendió a éste la mejoras. Aparte de ello, este planteamiento se enfrenta a dos dificultades. La primera de ella es que las mejoras no se limitaban a la casa sino que comprendían ciertas inversiones en la propia tierra que hacían inseparables a aquéllas de ésta y como Bonilla no pagó el precio de las mejoras, Alvarado no venía obligado a entregarlas. La segunda es que en el récord hay ausencia de prueba sobre el valor razonable del uso de la finca, excluyendo las mejoras. A falta de prueba de los daños, no procedía su condena.

*Por los motivos expuestos, la sentencia recurrida será modificada de conformidad con los términos de esta opinión y así modificada será confirmada.*

---

(5) Al terminar de presentar su prueba el demandado Bonilla solicitó del Tribunal que tuviese su Reconvención por enmendada en el sentido de reclamar como todo perjuicio, los cánones de arrendamiento mensuales que el demandante debió pagar a Comulada. La reconvención fue declarada sin lugar.