Antonio **RIVERA OTERO**,
et al., Plaintiffs,

v.

**UNITED STATES of America,**
**Defendant.**

**Civ. No. 89-064 HL.**

United States District Court,
D. Puerto Rico.

Nov. 21, 1990.

Juan T. Peñagarícano, San Juan, P.R., for plaintiffs.

Lydia Pelegrín, Asst. U.S. Atty., Hato Rey, P.R., for defendant.

## OPINION AND ORDER

LAFFITTE, District Judge.

This is an action for damages under the Federal Tort Claims Act, 28 U.S.C. secs.

1346(b) and 2671, *et seq.*, to recover for personal injuries sustained by the plaintiff, Antonio Rivera Otero ("Rivera"), and for emotional distress suffered by Rivera's wife and daughter, co-plaintiffs Marta Colón de Rivera and Carmina Rivera Colón, respectively. All administrative procedures were exhausted. This case came to a non-jury trial on September 26–27, 1990.

Upon due consideration of the testimonial and documentary evidence presented at trial, and pursuant to Federal Rule of Civil Procedure 52(a), this Court makes the following Findings of Fact and Conclusions of Law.

### FINDINGS OF FACT

This action involves the allegedly negligent administration of a barium enema, resulting in a Mallory–Weiss tear in plaintiff's esophagus. The following dissertation of facts is not for the squeamish. Plaintiff Rivera, 56 years old, went to the Veterans' Administration Hospital ("Hospital"), owned and operated by the United States, in San Juan, Puerto Rico on September 9, 1986 to undergo a barium enema, after having complained of pain in the left lower quadrant of his abdomen and occasional non-bloody diarrhea. Plaintiff had an extensive medical history of gastrointestinal complaints. Indeed, plaintiff testified that he had endured three prior barium enemas, only one of which indicated any disorder, that of inflammation of the colon. At plaintiff's initial visit to the Hospital, the examining physician ordered a barium enema in order to eliminate the possibility of diverticulosis, which was indicated by plaintiff's symptoms.

Upon arriving at the Hospital on the morning of September 9, plaintiff Rivera was attended by Dr. Yvonne Márquez. At the time, she was a resident in training at the University of Puerto Rico School of Medicine in the Diagnostic Radiology Program, and had previously performed approximately 200 barium enemas. All candidates accepted to this program have graduated from American Medical Association accredited schools and are licensed to practice medicine. While at the Hospital, the residents are under the direct supervision of an attending radiologist who in this case was Dr. Algia Ojeda. Dr. Ojeda has been the staff radiologist at the V.A. Hospital since 1982. On the day in question, she had twelve years of experience as a radiologist and had performed over 5,000 barium enemas.

There are two types of barium enemas: 1) single contrast and 2) double contrast. In the former, the barium enema is inserted into the anus, x-rays are taken while the patient is in various positions, and then the patient is allowed to relieve himself of the barium in the bathroom. In the latter, which was the type administered to the plaintiff, the same procedure is followed, but in addition, after the x-rays are taken, the radiologist drains the barium at the table, leaving only a thin film on the walls of the colon, and then air is pumped into the colon. The insertion of air distends the colon so that more precise x-rays can be taken. The amount of air pumped in is regulated: 100 ccs. of air is inserted with each pump. It is uncontroverted that the adult colon has the capacity for 4,000 ccs. of air when fully distended. It is also uncontroverted that the insufflation of air almost always causes discomfort to the patient, in varying degrees, in the form of abdominal pain or nausea.

The following facts of what occurred are undisputed. Dr. Márquez briefly explained the procedure to plaintiff Rivera. An x-ray was taken to determine that the patient's intestines were clean and then the enema was inserted. X-rays were taken in various positions and then the barium was drained at the table. Dr. Márquez then commenced to insufflate the air into the colon, and it is at this point that the dispute arises. Plaintiff avers that immediately after the first insufflation of air (100 ccs.), he felt nauseated, began retching, with intense pain and a tearing sensation in his stomach, and was expelling air through his mouth. He emitted a yell whereupon Dr. Márquez told the plaintiff that he must withstand the pain or the study would fail. She proceeded to insufflate air three more times, for a total of 400 ccs., even though

the plaintiff was still experiencing great pain and was yelling. At this point the doctor stopped the procedure, and the technician who was standing a few feet away behind a glass screen, ran to get Dr. Ojeda. Dr. Márquez' recollection of the events differs considerably. She testified that the plaintiff first complained after the second insufflation of air, and that the plaintiff did not yell or scream, but merely indicated that he was experiencing moderate pain in his abdomen. She asked him whether she should discontinue the study and he replied that she should proceed. Dr. Márquez made another insufflation of air, the plaintiff complained again, whereupon the doctor discontinued the study. She signaled the technician to find Dr. Ojeda because the plaintiff was sudoriferous and was complaining of nausea. Balancing the weight of the evidence, the Court finds that the plaintiff's version is more credible. Given the injury that was actually sustained by the plaintiff, the Mallory–Weiss tear, which is indisputably very painful, the likelihood that plaintiff yelled or screamed is high. However, the fact that Dr. Márquez continued to insufflate air after plaintiff yelled, although indicative of some insensitivity, does not evidence any negligence since the Court finds, *infra*, that no causal connection was established between the insufflation of air and the Mallory–Weiss tear.

When Dr. Ojeda arrived the plaintiff was complaining of chest and abdominal pains, nausea, blurry vision, and was sudoriferous. Dr. Ojeda, who testified as an expert witness and an occurrence witness, stated that she took the plaintiff's blood pressure and it was very high. Based on these symptoms, she thought the patient might be having cardiac problems and she immediately brought him to the emergency room. An endoscopy was eventually performed which revealed a Mallory–Weiss tear in plaintiff's esophagus, upon which plaintiff was admitted to the intensive care section of the Hospital. The tear commenced to bleed and the patient was given various blood transfusions. Most Mallory–Weiss tears heal themselves but this was not the case here. On September 12, 1986, the plaintiff underwent an operation to repair his Mallory–Weiss tear, which was successful. On September 19, 1986, plaintiff Rivera was discharged from the V.A. Hospital.

## EXPERT TESTIMONY

Dr. Juan J. Hernández Cibes was, ruefully, plaintiff's only expert witness at trial. The defendants conducted a voir dire of Dr. Hernández which revealed that he is an obstetrician, not a radiologist, that he performed two or three barium enemas more than thirty years ago during his residency, that he has been sued for malpractice as an obstetrician three times, that his medical license has been suspended twice, and that he has been hospitalized for substance abuse various times. Furthermore, his qualifications as an expert witness in an obstetrician/gynecology case in this district court (Civil 88–438) were considered very questionable for the above reasons. The defendant in the instant case moved to have him disqualified under Federal Rule of Evidence 703 since he is not an expert in radiology or gastroenterology. This Court reluctantly denied the motion. Although Dr. Hernández Cibes was clearly not qualified as an expert witness, disqualifying him would have effectively closed the door on plaintiffs' case. This Court decided not to penalize plaintiffs for their surprisingly poor selection of an expert witness. However, due to Dr. Hernández Cibes' complete lack of expertise in the field at issue here, and the apparent inconsistencies in his testimony, the Court accords very little or no weight to his testimony.

Dr. Hernández Cibes testified that the Mallory–Weiss tear was caused by the negligent administration of the barium enema. During his first day of testimony, Dr. Hernández Cibes stated that the positions plaintiff was placed in for the x-rays were improper and placed too much pressure on the chest cavity, and that the enema was not expelled prior to the insufflation of air. However, the following day, still on direct, he stated that the positions for x-rays were correct. In regards to expelling the enema, it seems that Dr. Hernández Cibes

thought the only way to expel the enema was by having the patient relieve himself in the bathroom. In fact, for a double contrast enema, as discussed above, the enema can be discharged by the radiologist right on the examining table through a tube, which is what Dr. Márquez and Dr. Ojeda testified occurred here. On cross-examination, Dr. Hernández Cibes admitted that he did not know how the plaintiff's barium enema had been discharged.

Having disposed of these two factual issues, the Court looks to Dr. Hernández Cibes' additional claims which were raised on the second day of his testimony. Dr. Hernández Cibes testified that the initial attending physician should never have ordered the barium enema, because knowing plaintiff's history of upper gastrointestinal troubles, and hypertension, plus his age, there was a risk of a Mallory–Weiss tear. Furthermore, Dr. Márquez erred by not taking a brief history of the plaintiff, and by continuing to insufflate air even though plaintiff was screaming in pain. Additionally, Dr. Márquez was not properly supervised since Dr. Ojeda was not in the same room with her.

Dr. Hernández Cibes testified that his opinion that the barium enema was ill advised was based on the well respected textbook authored by Henry L. Bockus, M.D., entitled *Gastroenterology*, vol. I, 2d ed. (1963). Bockus provides that a Mallory–Weiss tear of the cardia or lower esophagus results from "violent retching or vomiting" combined with high pressure in the esophagus or cardia. *Id.* at 620. An elderly person suffering from gastritis or esophagitis may be predisposed to a Mallory–Weiss tear. *Id.* at 621. Thus, concludes Dr. Hernández Cibes, the examining physician should never have prescribed a barium enema because of the plaintiff's predisposition to a Mallory–Weiss tear. However, on cross-examination the fallacy in this opinion became clear. Dr. Hernández Cibes admitted that a Mallory–Weiss tear is *not* a recognized complication of a barium enema. Thus, by prescribing a barium enema, the doctor could not have foreseen that a Mallory–Weiss tear could result. Indeed, Dr. Ojeda testified that in her twelve years of experience as a radiologist, she has never seen a Mallory–Weiss tear result from a barium enema. Nor had Dr. Heriberto Pagán Sáez, the defendant's expert witness in gastroenterology, who has performed or supervised approximately 40,000 barium enemas. Dr. Pagán Sáez testified that the only recognized complications of a barium enema are: a) perforation of the colon, which is the most common and most dreaded, and b) embolization of the barium into the veins of the colon.

Dr. Pagán Sáez is a board certified radiologist and is currently the Chief of the Radiology Department at the University of Puerto Rico. He has his own private practice and has sterling credentials. The Court finds his testimony to be vastly more credible than that of Dr. Hernández Cibes.

Dr. Pagán Sáez testified that the barium enema performed by Dr. Márquez was done according to standard operating procedure and that he would have conducted it the same. He testified that Dr. Ojeda's supervision of Dr. Márquez was also according to accepted medical procedure regarding residents in training. Dr. Pagán Sáez stated that anatomically and physiologically there is no relation between the administration of the barium enema examination and the Mallory–Weiss tear. In essence then, there is no cause and effect. Dr. Pagán Sáez stated that a Mallory–Weiss tear has never before been traced to a barium enema, to his knowledge.

In regards to the issue of whether the barium enema was negligently ordered by the initial examining physician, Dr. Pagán Sáez stated that knowing plaintiff Rivera's full medical history, including his complaints of gastritis and esophagitis (although never any proof that he actually suffered from such ailments), he would have ordered the barium enema and would not have taken any additional precautions in administering the barium enema. His rationale for this opinion was, again, that a Mallory–Weiss tear is completely unrelated to the administration of a barium enema and thus, no doctor would have foreseen such an occurrence. Therefore, even assuming, as plaintiff alleges, that Dr. Már-

quez failed to take the patient's medical history before proceeding, although this is directly contrary to her testimony, this does not show any negligence; with or without the medical history, the doctor should have proceeded, according to Dr. Pagán Sáez. This Court, finding Dr. Pagán Sáez to be eminently qualified, and his testimony to be very credible and persuasive, particularly when compared with that of plaintiffs' expert witness, accords great weight to the former's testimony.

## DISCUSSION

A prerequisite for recovery under the Federal Tort Claims Act is that there be a negligent or wrongful act or omission by an employee of the United States Government while acting within the scope of his employment, under circumstances where the Government, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred. 28 U.S.C. sec. 1346(b). Therefore, in determining whether defendant would be liable herein, the law of Puerto Rico is controlling. *Zabala Clemente v. United States*, 567 F.2d 1140, 1143 (1st Cir.1977).

 Tort claims in Puerto Rico arise under Article 1802 of the Puerto Rico Civil Code, 31 L.P.R.A. sec. 5141, which states, in relevant part, "A person who by act or omission causes damages to another through fault or negligence shall be obliged to repair the damage so done." To state a claim for damages under this provision plaintiff Rivera must establish three elements: 1) a negligent or wrongful act or omission; 2) proof of damages; and 3) a causal relationship between the damage and the action or omission of the defendants. *Hernandez v. Fournier*, 80 D.P.R. 94, 96–97 (1957). Employers can be found liable for negligence of their employees under the doctrine of vicarious liability. 31 L.P.R.A. sec. 5142.[1]

 The legal standard for evaluating medical malpractice cases in Puerto Rico is whether or not the doctor acted in accordance with the generally accepted standards of care of the medical profession. *Wilson v. U.S. Government*, 699 F.Supp. 20, 23 (D.Puerto Rico 1988). Hospitals must exercise the same care and far-seeing measures any reasonable person would in similar circumstances, and must offer necessary medical attention according to generally accepted medical professional practice. *Crespo v. H.R. Psychiatric Hospital, Inc.*, 114 D.P.R. 796 (1983). The Supreme Court of Puerto Rico has set forth the requisite legal analysis:

In cases involving medical treatment and the possibility of medical malpractice, there exists always a presumption that the treating physicians have observed a reasonable degree of care and attention in the process of giving medical attention and treatment. The plaintiff has the burden of refuting such presumption with evidence that establishes that the alleged fault and damage is more than a mere hindsight possibility. Furthermore, for plaintiff to prevail, the evidence must show that among all listed potential causes of fault and damages, the negligent act of treating physicians stands out as the main probable cause of the fault and the consequent damage.

*VDA. De Lopez v. E.L.A.*, 104 D.P.R. 178, 183 (1985).

 Applying the above standards to the facts of this case, the Court concludes that the plaintiff has failed to prove medical malpractice in the prescription of, and administration of, his barium enema. Plaintiff presented no evidence which would demonstrate a causal relationship between

1. Where pertinent, this provision reads:
 The obligation imposed by the preceding section is demandable, not only for personal acts and omissions, but also for those of the persons for whom they should be responsible.
 \* \* \* \* \* \*
 Owners or directors of an establishment or enterprise are likewise liable for any damages caused by their employees in the service of the branches in which the latter are employed or on account of their duties.

his Mallory–Weiss tear and the barium enema. In cases of medical malpractice what is or is not the proper practice is a question for experts and it can be established only by their testimony. *Guzman v. Silen*, 86 D.P.R. 504 (1962). Dr. Pagán Sáez, whose testimony the Court accorded great weight, credibly testified that the barium enema was properly requested by the initial examining physician based on the patient's symptoms, and was administered according to generally accepted medical procedures. Furthermore, Dr. Pagán Sáez stated that the barium enema did not cause the Mallory–Weiss tear in plaintiff's esophagus. This Court concludes, on the weight of the evidence and expert testimony, that there was no causal connection between the Mallory–Weiss tear and the barium enema, and thus, negligence has not been shown. *See, e.g., Crespo v. Hernandez*, 88 J.T.S. 87 (1988).

Moreover, even if the barium enema in some way contributed to plaintiff's Mallory–Weiss tear, it was not a foreseeable complication and thus the defendant cannot be held liable. The defendant's duty to foresee does not extend to any conceivable danger which may injure the plaintiff, but rather, only to dangers within the realm of probability which would be anticipated by reasonable and prudent persons. *Lozada v. Commonwealth*, 116 D.P.R. 202 (1985). The testimony of Dr. Ojeda and Dr. Pagán Sáez, that in all their experience they have never encountered a Mallory–Weiss tear in connection with a barium enema, and that a Mallory–Weiss tear is not a recognized complication of a barium enema, convinces the Court that the tear was not a reasonably foreseeable danger.

The Court sympathizes with the plaintiff for his unfortunate occurrence, however, it finds no evidence of negligence on the part of the defendant. Accordingly, this action is DISMISSED.

IT IS SO ORDERED.